IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RIKKI WILLIAMS,

                Plaintiff,                OPINION AND ORDER

v.

                                            22-cv-176-wmc

TIMOTHY JORDAN,

                Defendant.

---

*Pro se* plaintiff Rikki Williams alleges that Correctional Officer Timothy Jordan required her to remove her hijab[1] before allowing her to visit her husband at Columbia Correctional Institution. For this, Williams seeks declaratory and injunctive relief against Jordan in his individual and official capacities, claiming his actions violated her (1) First Amendment right to freely exercise her religion and (2) Fourteenth Amendment right to equal protection.[2] (Dkt. #1 at 5.) She also seeks compensatory and punitive damages.

Jordan has since moved for summary judgment on the merits and on grounds of qualified immunity. (Dkt. #8.) Based on the evidence of record, a reasonable jury could find that Jordan acted with discriminatory intent, but not that Williams' right to exercise her religion freely was substantially burdened, or at least that this burden was clearly

---

[1] Williams describes a hijab as a headscarf worn in public by Muslim women as "an act of worship" and "a sign of modesty." (Dkt. #18 at ¶¶ 6, 30, 32.)

[2] The parties have also briefed whether Williams should be permitted to proceed with an independent claim based on Jordan's admitted violation of prison policy regarding visitors. (Dkt. ##9 at 9; 14 at 3.) Her complaint does not assert such a claim, but even if it had, the court would dismiss it because: (1) a "violation of a jail policy is not a constitutional violation enforceable under 42 U.S.C. § 1983," *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020); and (2) violations of prison policy are generally addressed first through the prison grievance system. *See* Wis. Admin. Code § DOC 310.01(2) (inmate complaint review system allows inmates to raise issues regarding department policies, rules, living conditions, and employee actions, including civil rights claims).

established by existing federal case law. Accordingly, the court will grant Jordan's motion in part as to Williams First Amendment claim and deny it in part as to her Fourteenth Amendment claim, which will proceed to trial.

## UNDISPUTED FACTS[3]

Williams has worn a hijab since converting to Islam in 2016. Williams chooses "to wear the hijab in obedience to the command in the Qu'ran," as "both a sign of modesty and an act of worship." (Dkt. #18 at ¶ 6.) Williams attests that being directed by a non-Muslim to remove her hijab "is both degrading and disrespectful." (*Id.* at ¶ 31.)

Williams visited her husband Derek Williams weekly while he was incarcerated at Columbia between 2019 and 2022. When visitors arrive at Columbia, they show their photo identification to the Lobby Sergeant, complete a Request to Visit Inmate form, and walk through a metal detector before entering the visiting room. Prison policy allows visitors to wear headwear so long as it does not conceal the visitor's identity, but non-religious headwear must be removed and inspected before the visitor passes through the metal detector. Visitors wearing religious headwear that conceals identity must allow staff to view their faces to verify their identities, and female staff must perform this inspection on female visitors.

---

[3] Unless otherwise indicated, the following facts are material and undisputed as drawn from the parties' proposed findings and evidence of record viewed "in the light most favorable to [plaintiff as] the nonmovant and avoid[ing] the temptation to decide which party's version of the facts is more likely true." *Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014).

Officer Timothy Jordan was processing inmate visitors to Columbia on November 6, 2021, when Williams arrived to see her husband. Because visitation had been suspended for over a year under COVID-19 protocols, Jordan attests that he reread the visitation policy to refresh his memory of the proper procedures in preparation for this assignment. Jordan further attests that he misread the policy, mistakenly believing that *every* visitor had to remove their headwear regardless of its purpose, and that Williams was the first woman wearing a hijab that he had personally encountered since reviewing the policy.

Williams disputes all of these assertions, not only because the headwear policy had long been in place and is clear, but because she had visited Columbia over 30 times wearing her hijab since in-person visitations resumed. Williams further attests that the only other time she was even *asked* to remove her hijab was in 2019, when a rookie officer at Columbia made the request but was corrected by a supervisor. Williams' husband also attests that that Jordan knew he was Muslim, his wife was known to wear a hijab, and she always wore it to their visits.[4] (Dkt. #17 at ¶¶ 5, 9, 17.)

Regardless, Jordan instructed Williams to remove her hijab after she passed through the metal detector that day. The parties dispute the exchange that followed. Williams attests that when she told Jordan that her hijab was a religious covering, he responded,

---

[4] Although classic hearsay, Williams' husband attests that: two other visitors said they did not have to remove their hats on that same day; the family of a Hutterite inmate were never directed to remove their religious headwear; and a female officer said she tried to correct Jordan regarding the religious headwear policy. (Dkt. #17 at ¶¶ 16, 18, 21.) The record does not contain statements from any of these individuals, so the court will not consider these allegations. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (statements "are admissible in summary judgment proceedings to establish the truth of what is attested" only to the extent that the "testimony would be admissible if [the individual] were testifying live.").

"that's your religion, not mine," and when she then asked him what policy required her to remove it, he said "you could have a bomb or anything under there."[5] (Dkt. #18, ¶¶ 9-10.) While Jordan disputes that he gave either response or that Williams ever refused to remove her hijab in front of him, these are obviously facts established for purposes of summary judgment.

Jordan recalls having seen Williams without her hijab several times in the past, which she explicitly denies. Finally, Jordan claims Williams told him that the hijab was common headwear for Muslim women, and she was "sick of having to take it off," so he assumed that other staff members had previously asked her to remove her hijab and that doing so again would not be a significant issue. (Dkt. #11, ¶ 10.) In her affidavit, Williams disputes making these statements as well, asserting that Jordan knew she would not remove her hijab in front of him.

Williams only agreed to remove her hijab once Jordan told her that the visit with her husband would be cancelled unless she did so, and then only before a female officer. Indeed, Williams attests that in allowing her to do so, Jordan laughed and said, "I'll let you remove it in front of [a] woman, but if you wish to continue to visit here you need to figure out what you want to wear." (Dkt. #18, ¶ 13.)

---

[5] Jordan objects to Williams' statements as "inadmissible hearsay," but does not specify the basis for the objection. (Dkt. #21 at ¶¶ 15-16.) This objection is overruled because Williams attests to what she told Jordan during the incident in a declaration signed and verified under penalty of perjury as required by 28 U.S.C. § 1746. Regardless, these statements are not being offered for the truth of the matter asserted; they go to Williams' state of mind and provide context to Jordan's statements which are admissible as those of a party-opponent. *See* Fed. R. Evid. 801(d)(2).

At that point, Jordan asked a female officer to take Williams to the restroom to inspect the hijab in private. Jordan did not accompany them or otherwise observe Williams remove her hijab, and Williams and the female officer exited the restroom less than a minute later with Williams again wearing her hijab. Williams was allowed to go to the visitor's room, where she told her husband what had happened and asked him to pray for her.

Williams' husband filed an information request about the incident. (Dkt. #18-3.) Although his grievance was denied because the actions taken were not against him directly, her husband received an apology in response and assurances that the matter would be addressed with Jordan. About a week after the incident, Jordan met with the security director and unit manager, who reviewed the visitation policy with him and instructed him that a visitor does *not* need to remove religious headwear such as a hijab unless the headwear conceals his or her identity.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**I. Plaintiff's claim for injunctive relief and official-capacity claims**

As an initial matter, the court will dismiss plaintiff's claims for injunctive relief, as well as her official-capacity claims. The complaint does not specify what kind of injunctive relief plaintiff is seeking. (Dkt. #1 at 5.) And it is not clear what injunctive relief the court could grant because "[a] court's power to grant injunctive relief only survives if such relief is actually needed." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009).

Here, Jordan has now received additional training on the visitation policy and there is no evidence that he misapplied it before this incidence or since. Moreover, plaintiff's husband is no longer housed at Columbia, so plaintiff does not need to return there, does not allege that it is likely she will, or that she has had to remove her hijab at any other time or institution. Without "some cognizable danger of recurrent violation, something more than a mere possibility," plaintiff cannot maintain a claim for injunctive relief. *Id.* Likewise, because the Eleventh Amendment allows "state officials to be sued in their official capacities for injunctive relief" but not for money damages, *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993), plaintiff cannot maintain official-capacity claims against Jordan either.[6]

---

[6] Defendant also seeks dismissal of plaintiff's claim for a declaratory judgment ordering that Jordan's conduct violated her constitutional rights. (Dkt. #1 at 5.) Because plaintiff is not seeking a declaration of rights between the parties, but relief that would be duplicative of a jury's conclusion at trial that Jordan violated plaintiff's constitutional rights, the court will also dismiss this claim for declaratory relief. *See Pearson v. Welborn*, 471 F.3d 732, 743 (7th Cir. 2006) (rejecting request for declaratory relief that "would be doing nothing more than reiterating the jury's conclusion," and thus "serve no purpose" beyond "perhaps opening the door" on plaintiff's request for attorney's fees).

**II. Free Exercise Claim**

The court will also dismiss plaintiff's First Amendment free exercise claim because no reasonable jury could conclude on this record that her religious practice of wearing a hijab in public was substantially burdened. The First Amendment guarantees the right to free exercise of religion and "requires government respect for, and noninterference with . . . religious beliefs and practices." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). The government cannot impose a "substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). "A substantial burden puts substantial pressure on an adherent to modify [her] behavior and to violate [her] beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016).

Plaintiff asserts that "the government has placed a substantial burden on a central religious practice." (Dkt. #14 at 2.) As evidence, she attests that she wears her hijab in public to cover what she "preserves for her husband" and that it was "equivalent to rape" for Jordan, a man who is not her husband, to direct her to remove it. (Dkt. #18, ¶¶ 6, 30, 48.). As an initial matter, the court has no doubt that Jordan's directive was distressing. *See Khatib v. Cnty. of Orange*, 639 F.3d 898, 907 (9th Cir. 2011) (Gould, J., concurring) ("A Muslim woman who must appear before strange men she doesn't know, with her hair and neck uncovered in a violation of her religious beliefs, may feel shame and distress."). Ultimately, however, a female officer inspected plaintiff's hijab privately in the women's bathroom, a process that lasted less than a minute.

Plaintiff does not and cannot argue that this accommodation was substantially burdensome, nor that she was ever without her hijab in public or before a man other than

7

her husband in violation of her beliefs.  (*See* dkt. ##1 at ¶¶ 7-23; 14 at 2-3; 18 at ¶¶ 13-14.)

Without evidence that any male officer viewed her without her hijab, or that being viewed without her hijab by a female officer caused her distress or shame, plaintiff has not shown that Jacob substantially burdened her religious practices.  *Cf. Clark v. City of New York*, 560 F. Supp. 3d 732, 740-42 (S.D. N.Y. 2021) (denying the city's motion to dismiss the plaintiff's religious discrimination claim in part because the city's policy requiring Muslim women to remove their hijabs for booking photos made available to men violated the First Amendment); *Al-Kadi v. Ramsey Cnty.*, No. 16-2642, 2019 WL 2448648, at *9-10 (D. Minn. June 12, 2019) (denying summary judgment in defendant's favor on plaintiff's RLUIPA claims because a reasonable jury could conclude that forcing plaintiff to remove her hijab in front of a male officer and taking a publicly-available booking photo without her hijab constituted substantial burdens); *Kaukab v. Harris*, No. 02 C 0371, 2003 WL 21823752, at *4, 6-7 (N.D. Ill. Aug. 6, 2003) (denying defendant's motion to dismiss plaintiff's free exercise claims based on allegations that plaintiff removed her hijab and endured a complete body search by two female officers in a private room as punishment after plaintiff refused to remove her hijab in public or in front of a man).  Accordingly, the court will dismiss this claim on the merits or at least based on any claimed violation not yet being clearly established by case law.

### III.  Equal Protection Claim

However, plaintiff's equal protection claim must proceed to trial.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be

treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To avoid summary judgment on this claim, plaintiff "needed to come forward with evidence that would allow a reasonable jury to infer that [defendant] intentionally treated [her] differently because of her" religion. *Lisle v. Wellborn*, 933 F.3d 705, 719 (7th Cir. 2019).

The parties' dueling versions of their exchange preclude summary judgment on this claim. Defendant argues that he did not treat plaintiff differently because he asked all visitors to remove their headwear based on his misreading of the policy, and he attests that he did not make any disparaging remarks. However, plaintiff was not wearing regular headwear; she was wearing religious headwear that defendant admits he had seen her wearing in the past. Plus, defendant told her to remove her hijab *after* she had passed through the metal detector.

If a jury credits plaintiff's testimony that she explained the hijab's religious significance to defendant, it could infer discriminatory intent from defendant's alleged responses of "that's your religion, not mine," and "you could have a bomb or anything under there." (Dkt. #18 at ¶¶ 9-10.) Only a jury can make these material credibility determinations.

Finally, defendant alternatively argues that qualified immunity should protect him from suit because it is not "clearly established" that he violated plaintiff's constitutional rights "through a one-time mistake in applying a policy that allowed a religious exemption." (Dkt. #9 at 11.) However, that argument is based on a jury accepting defendant's version of events not plaintiff's, which if the latter were believed would preclude a finding of qualified immunity under well-established, equal protection principles, based on his

claimed derisive treatment of her religious beliefs in violation of the institution's long-standing policy. *See Price as next friend of J.K. v. Muller-Owens*, 516 F. Supp. 3d 816, 830 (W.D. Wis. 2021) ("[E]ven under the doctrine of qualified immunity, the court must accept plaintiff's version of events as true at this point and must draw reasonable inferences in her favor."). Accordingly, the court will deny defendant's motion for summary judgment with respect to this claim.

ORDER

IT IS ORDERED that defendant's motion for summary judgment (dkt. #8) is GRANTED in part and DENIED in part. The motion is denied on plaintiff's Fourteenth Amendment equal protection claim, but it is granted in all other respects and plaintiff's remaining claims are DISMISSED with prejudice.

Entered this 6th day of June, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge